DAVID ALAN PETERSON, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 17538

November 12, 1987 744 P.2d 1259

*Carelli & Miller,* Las Vegas, for Appellant.

---

456

*Brian McKay,* Attorney General, Carson City, *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, and *Bradford Robert Jerbic,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, STEFFEN, J.:

Appellant David Alan Peterson appeals from his convictions of offering to sell and giving away a controlled substance. For the reasons set forth below, we reverse.

### The Facts

In the course of his work as an undercover narcotics officer, James Campbell developed a relationship of trust with Leslie Dekeyser and periodically purchased cocaine from her. Officer Campbell repeatedly asked Dekeyser to introduce him to someone who could provide him with larger amounts of cocaine.

Near the hour of 4 a.m. on August 12, 1983, Dekeyser phoned Campbell and told him to join her in room 1101 of the Tropicana Hotel where she would introduce him to a source of larger quantities of cocaine.[1] Campbell responded promptly and was greeted by both Dekeyser and Peterson. Campbell stayed in the room with Dekeyser and Peterson for approximately four hours. During that time, all three ingested cocaine.

---

[1]The "source" turned out to be Peterson. Dekeyser later testified the only reason she believed Peterson could provide cocaine was because he knew a lot of people.

Campbell testified at trial that, during this first meeting, Peterson offered to sell him three kilos of cocaine for $150,000. Campbell also testified that Peterson told him to secure the money that afternoon and Peterson would provide the cocaine. The officer also stated that Peterson gave him a 0.6 gram sample of cocaine before he left to obtain the $150,000.

Campbell exited the room at approximately 8:00 a.m. to secure the money. After leaving, he spoke with two surveillance officers and a supervisor, each of whom later testified at trial about their conversations with Campbell. At about 7:30 p.m., Campbell returned to the room with $150,000. However, Peterson had no cocaine and a sale was never consummated. Moreover, Peterson testified at trial that none of the alleged drug transactions with Campbell ever occurred.

Peterson was convicted of the two felonies charged: giving away a controlled substance and offering to sell a controlled substance. He was sentenced to ten years on each count, but the sentences were suspended and he was given probation. This appeal followed.

## Discussion

After leaving room 1101 to obtain the $150,000, Campbell spoke with three other officers: Sergeant Edwards, Officer Collins and Officer Acklin. Collins testified Campbell told him that Peterson had given Campbell a small amount of cocaine and wanted to sell him more. Acklin and Edwards testified Campbell told them that Peterson had offered to sell Campbell cocaine. All three officers' testimony was admitted despite hearsay objections.

Peterson argues that the lower court erred in admitting the officers' testimony as prior consistent statements. We agree. NRS 51.035 provides:

"Hearsay" means a statement offered in evidence to prove the truth of the matter asserted unless:

. . . .

2. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

. . . .

(b) Consistent with his testimony and offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. . . .

On cross-examination, Campbell was accused of fabricating his testimony about Peterson's actions.[2] Therefore, the lower

---

[2]On cross-examination, the following exchange occurred:

court could properly admit, under NRS 51.035(b), prior consistent hearsay statements to corroborate Campbell's testimony. However, to be admissible, these prior consistent statements must have been made before Campbell had a motive to lie. *See* Smith v. State, 100 Nev. 471, 472, 686 P.2d 247, 248 (1984); Daly v. State, 99 Nev. 564, 568-69, 665 P.2d 798, 802 (1983).

This court has previously adopted defendants' theories of cases to determine when the hearsay declarant's motive to lie arose. *See Daly,* 99 Nev. at 569, 665 P.2d at 802 ("[if the motives of the hearsay declarant] were *as the defense suggested,* the record would not affirmatively show that her statements to her friend were made when she had no motive to fabricate.") (emphasis added); Gibbons v. State, 97 Nev. 299, 301-02, 629 P.2d 1196, 1197 (1981).

Peterson argued at trial that Campbell's motive to lie arose during his first meeting with Peterson and Dekeyser. Peterson argued that when Campbell entered the room at 4 a.m. and saw Dekeyser alone with Peterson, and then later saw Dekeyser repeatedly enter a bedroom alone with Peterson, Campbell became jealous and began his "vendetta" against Peterson. Under Peterson's theory, Campbell's statements to the other officers clearly occurred subsequent to the occasion for the motive. His comments to the three officers were made after he ended his four-hour stay in the room and thus after the occasion for the allegedly jealous feelings and vendetta arose.[3] Therefore, the lower court's admission of the three officers' testimony was error.

The prosecution's case rested entirely on the credibility of Campbell. The case was, in essence, a swearing contest between Campbell and Peterson. By admitting hearsay testimony that bolstered the credibility of a lone, crucial witness, the lower court committed prejudicial error. *See Smith,* 100 Nev. at 474, 686 P.2d at 249; *Daly,* 99 Nev. at 569, 665 P.2d at 802; *Gibbons,* 97 Nev. at 302, 629 P.2d at 1197. This is particularly true when three police officers merely repeat the hearsay testimony of Campbell, thereby expanding the effect and credibility of their fellow officer's testimony.

---

Ms. Roske: Well, isn't it true that you've made these allegations against David Peterson because you're jealous and for your own vengeance, your own vendetta?

Campbell: That's not true at all.

[3]We, of course, express or infer no view concerning the strength or veracity of Peterson's theory. However, the State accorded at least theoretical value to Peterson's contention by using it as a basis for the erroneous admission of the hearsay testimony.

Moreover, the prosecutor highlighted the officers' hearsay corroboration in his closing arguments. We have noted that such reemphasis magnifies the prejudicial effect of improperly admitted corroborating hearsay. *See Daly,* 99 Nev. at 569, 665 P.2d at 802; *Gibbons,* 97 Nev. at 302, 629 P.2d at 1197.

Because the lower court committed prejudicial error by admitting the hearsay testimony of the three officers, it is unnecessary to consider other issues. The judgment of conviction is reversed and the case remanded for a new trial.

YOUNG, J., SPRINGER, J., and MOWBRAY, J., concur.

GUNDERSON, C. J., concurring:

I fully agree with my brethren; however, I think it may be well to add a few further comments.

Perhaps it can be argued that, when one is in pursuit of professional distinction as a narcotics officer, one should not be expected to respect either the norms of social propriety or of the law. The police officer who figures prominently in the instant case evidently thinks this is so, and, of course, he is as entitled to his opinion as any other person. I personally will not assay to make moral judgments about his behavior, but rather will permit the readers of this opinion to reach their own conclusions. I must, however, recite the salient facts of the officer's activities, so that I may explain my perceptions about his motives in the factual context of this case.

As my brethren have pointed out, the central issue before us is: At the time the officer made his hearsay statements to his fellow officers, did he then have a motive to lie, or to distort intentionally or unintentionally? Although I agree with the analysis of my brethren, *i.e.* that jealousy inferably gave the officer a motive to distort, I wish to elaborate upon the issue of motive from what I consider to be a more fundamental perspective.

Now, then, let it first be said that Leslie Dekeyser was a businesswoman of some ability and distinction, who had fallen victim to drug-pushers and had become addicted to cocaine. She operated some fashionable dress shops which, at one time at least, before her addiction, had been successful. The record indicates she was a user of cocaine, not a "pusher" in any committed sense.

It appears from the record that the officer in question, whatever his other qualities may be, is a physically attractive man. An undercover narcotics officer for the Las Vegas Metropolitan Police Department, the officer apparently portrayed himself as a "swinger," out for good times on the Las Vegas "strip." In this guise, he met Dekeyser and—pursuing his efforts to "score"

arrests—he established a friendship, and then ultimately a romantic relationship with her.

While enjoying her society thus, the officer induced Dekeyser to procure cocaine at his instance—which the policeman was wont to consume with her. As noted by my brethren, he repeatedly pressed her to find someone who could sell him larger quantities of drugs than her modest contacts were able to supply. Ultimately, attempting to meet his expectations, Dekeyser introduced him to appellant Peterson. Her uncontested testimony is that she did not do so because she had any information that he was a dealer, but only because she was aware that Peterson "knew a lot of people."

It is with this factual background in mind that I tender the thought that, in addition to the motive of jealousy mentioned by my brethren, the officer in question had another, more fundamental reason to dissemble or distort, when he tendered hearsay reports of Peterson's alleged inculpatory remarks to the "back-up" officers outside the hotel room.

It seems quite clear that, for some time previously, the officer in question had harbored a fixed purpose ultimately to "set up" and to arrest the woman he had seduced into serving his purposes and needs. I suggest that police officers, like other humans, are motivated to see that their own enterprises succeed. I suggest this is true, axiomatically, even of the best and most honorable of officers, a category in which I believe many readers may conclude the officer in question does not belong. Indeed, psychologists suggest that humans are subject to a tendency to hear words in accord with their own expectations—a phenomenon called "selective auditory perception."

It therefore seems clear that, even in prosecutions far less clouded than this one, this court could not condone any general practice permitting a prosecutor to bolster the testimony of an officer who has precipitated an arrest, by introducing the out-of-court assertions of that same officer that were made to other officers who heard nothing at all. A fortiori, I think we must take such a view in this case, in which the officer's motives were otherwise suspect (as my brethren have noted), and in which I believe most persons would agree some of his conduct was unethical and arguably illegal.[1]

In any case, from the facts of this case, I believe it clearly appears that the officer had a pre-existing fixed purpose to "score a bust" with any person Dekeyser might be induced to lure to him—which person proved to be the hapless Peterson, a legiti-

---

[1] It may be worthwhile to note that, following the incident in question, the officer was relieved from duty as an undercover agent and assigned to airport guard duty.

mate businessman with no criminal record whatever. Obviously, therefore, quite apart from jealousy, at the time of his out-of-court statements, the officer had a preexisting motive to lie, or, at least, to construe the words of Dekeyser and Peterson in accord with the officer's established interests and purposes.

I question that there should ever be a case in which an investigating officer, who arranges an arrest, may properly bolster his own story by making and then invoking contemporaneous out-of-court statements made to back-up officers.[2] In any event, if one can hypothesize a state of facts in which such hearsay would be legitimate, I suggest that the instant case does not present it.

Finally, I also wish to note that, although I have no fundamental disagreement with my brethren, I believe as a matter of judicial economy that we should say right now that this case is not worth a retrial. Thus, I would remand with instructions to dismiss. At any retrial, as my brethren point out, the "back-up" officers could not properly testify. Also, as has been noted, the investigating officer's testimony would be impeached by his own recognized motive of potential jealousy, based on his relationship with Dekeyser. The officer's testimony is directly contradicted by appellant Peterson who, as previously mentioned, is a businessman with no prior arrests. His testimony is also directly contradicted by Dekeyser, the vulnerable but once socially respectable businesswoman whom he used, lied to, manipulated, and betrayed. In the face of all this, I submit with all due respect to the officer that, at a new trial, his uncorroborated interpretation of what was said behind the closed doors of a hotel room would not establish an offer to sell drugs beyond a reasonable doubt.

---

[2]Obviously, such an officer's testimony will almost always be contradicted and, if we were to hold that such contradiction routinely opens the door to the introduction of out-of-court hearsay statements, then the limited exception that NRS 51.035 contemplates to the hearsay rule would be expanded to subsume the rule. Clearly, such a thing was never intended by our Legislature.